**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

WILLIAM LEONARD,  )  3:09-cv-00644-LRH (WGC)
        Plaintiff,  )
    vs.  )  **REPORT AND RECOMMENDATION**
          )  **OF U.S. MAGISTRATE JUDGE**
MCDANIEL, et al.,  )
        Defendants.  )

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Injunctive Relief. (Doc. # 30.)[1] Defendants opposed (Doc. # 43) and Plaintiff replied (Doc. # 52). In addition, before the court is Plaintiff's Motion for Summary Judgment. (Doc. # 41.) Defendants opposed (Doc. # 72) and Plaintiff relied (Doc. # 73). Finally, before the court is Defendants' Motion for Summary Judgment. (Doc. # 54.) Plaintiff opposed (Doc. # 65) and Defendants replied (Doc. # 67).

After a thorough review, the court recommends that Plaintiff's Motion for Injunctive Relief (Doc. # 30) and Motion for Summary Judgment (Doc. # 41) be denied, and that Defendants' Motion for Summary Judgment (Doc. # 54) be granted.

**I. BACKGROUND**

At all relevant times, Plaintiff William Leonard (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. #9-2).) The events giving

---

[1] Refers to the court's docket number.

1  rise to this action took place at Ely State Prison (ESP). (*Id.* at 2.) Plaintiff, a *pro se* litigant,
2  brings this action pursuant to 42 U.S.C. § 1983. (*Id.* at 1.) Defendants are E.K. McDaniel,
3  Howard Skolnik, Robert Bannister, and Gregoy Martin. (*See* Doc. # 9-2 at 2-3, Screening Order
4  (Doc. # 9) at 3.)

5        Plaintiff originally filed his Complaint in the Seventh Judicial District Court for the State
6  of Nevada, and Defendants subsequently removed the action to federal court. (Doc. # 1.) On
7  screening, the court determined that Plaintiff states a colorable Eighth Amendment claim for
8  deliberate indifference to a serious medical need. (Doc. # 9 at 5.) Plaintiff claims that in 1989,
9  his ankles were broken and his heels were severely fractured, leaving him crippled for life.
10 (Doc. # 9-2 at 9.) He asserts that while he was once given a "no kneel" order, prison medical
11 staff refused to renew that order, leaving him subject to severe pain. (*Id.* at 10-11.) Plaintiff
12 alleges that defendants discontinued the "no kneel" order and forced him to stand with
13 debilitating injuries while in restraints. (*Id.* at 4.)

14       Plaintiff has filed a motion for injunctive relief asking the court to renew his "no-kneel"
15 order and send him to a specialist to be fitted for a new pair of orthopedic shoes or heel insoles.
16 (Doc. # 30 at 41.) Defendants oppose the motion arguing that Plaintiff's request for injunctive
17 relief is moot, and he fails to meet the legal requirements for obtaining injunctive relief. (Doc.
18 # 43.)

19       In addition, Plaintiff and Defendants move for summary judgment. (Doc. # 41, Doc.
20 # 54.) Defendants argue: (1) there is no evidence that Defendants were deliberately indifferent
21 to Plaintiff's serious medical need; (2) Defendants are entitled to summary judgment as to
22 Plaintiff's official capacity damages claims; and (3) Defendants McDaniel, Skolnik, and
23 Bannister are entitled to qualified immunity. (Doc. # 54.) Plaintiff, on the other hand, argues
24 that Defendants were deliberately indifferent to his serious medical need when they failed to
25 renew a "no kneel" order between September 10, 2008 and August 16, 2010. (Doc. # 41.)

26       **II.  PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (Doc. # 30)**
27 **A.  LEGAL STANDARD**
28       The purpose of a preliminary injunction is to preserve the status quo if the balance of

2

equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter*

3

1 test are also met." *Id*.

2   An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

   Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id*. at 999.

**B. DISCUSSION**

   Defendants are correct that Plaintiff admits in his motion that Defendant Martin renewed the "no-kneel" order, which is still in effect. (*See* Doc. # 30 at 5, Doc. # 43 at 4.) A copy of this order is attached to Plaintiff's motion. (Doc. # 30 at 51.)

   The court finds that this admission defeats any claim by Plaintiff that he will suffer

4

1 irreparable injury in the absence of injunctive relief, that the balance of hardships tips in his
2 favor, or that injunctive relief is in the public interest. Plaintiff's speculation that the "no-kneel"
3 order will not be renewed in the future is not sufficient to demonstrate imminent irreparable
4 harm. "[A] preliminary injunction will not be issued simply to prevent the possibility of some
5 remote future injury." *Winter*, 555 U.S. at 22 (citations omitted). Plaintiff has not met his
6 burden of justifying the extraordinary remedy of an injunction.

7 The court also agrees with Defendants that Plaintiff's request for referral to an
8 orthopedic specialist is not properly before the court because it is not part of this action.
9 Although the Ninth Circuit has not addressed the issue directly, other circuits have repeatedly
10 held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury
11 claimed in the party's motion and the conduct asserted in the complaint." *Devose v.*
12 *Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51
13 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World*
14 *Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). This action is based on
15 Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs
16 when they failed to renew a no-kneel order. (Doc. # 9-2.) Plaintiff is not asserting that
17 Defendants have violated his Eighth Amendment rights in connection with a referral to an
18 orthopedic specialist. Injunctive relief is used to address issues related to the underlying
19 violations presented in the complaint. Plaintiff is not permitted to file a complaint in federal
20 court and then use that action as a forum to air his unrelated grievances. Such complaints are
21 properly lodged using the prison grievance system and, if they remain unresolved, by filing a
22 new action.

23 Therefore, the court recommends that Plaintiff's Motion for Injunctive Relief (Doc. #
24 30) be denied.

25 **III. MOTIONS FOR SUMMARY JUDGMENT (Doc. # 41, Doc. # 54)**
26 **A. LEGAL STANDARD**

27 "The purpose of summary judgment is to avoid unnecessary trials when there is no
28 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

5

18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

6

1  to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the
2  nonmoving party failed to make a showing sufficient to establish an element essential to that
3  party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at
4  323-25. If the moving party fails to meet its initial burden, summary judgment must be denied
5  and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*
6  *Co.*, 398 U.S. 144, 160 (1970).

7  If the moving party satisfies its initial burden, the burden shifts to the opposing party
8  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*
9  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,
10 the opposing party need not establish a material issue of fact conclusively in its favor. It is
11 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
12 parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
13 *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The
14 nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations
15 that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions
16 and allegations of the pleadings and set forth specific facts by producing competent evidence
17 that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

18 At summary judgment, a court's function is not to weigh the evidence and determine the
19 truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
20 While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be
21 drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not
22 significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations
23 omitted).

24 **B. DISCUSSION**
25 **1. Standard**
26 The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and
27 "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency."
28 U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and

1  quotations omitted).

2        A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). "Budgetary constraints, however, do not justify cruel and unusual punishment." *Id*.

        "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

        If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows

8

1  of and disregards an excessive risk to inmate health or safety; the official must both be aware
2  of the facts which the inference could be drawn that a substantial risk of serious harm exists,
3  and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*
4  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858).
5  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they
6  deny, delay, or intentionally interfere with medical treatment" or the express orders of a
7  prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865
8  F.2d at 201 (internal quotation marks and citation omitted). Where delay in receiving medical
9  treatment is alleged, a prisoner must demonstrate that the delay led to further injury.
10 *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407
11 (9th Cir. 1985) (per curiam).

12     In addition, a prison physician is not deliberately indifferent to an inmate's serious
13 medical need when the physician prescribes a different method of treatment than that
14 requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in
15 diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth
16 Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion
17 regarding the best course of medical treatment does not amount to deliberate indifference);
18 *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a
19 prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To
20 establish that a difference of opinion amounted to deliberate indifference, the inmate "must
21 show that the course of treatment the doctors chose was medically unacceptable under the
22 circumstances" and that the course of treatment was chosen "in conscious disregard of an
23 excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.
24 1996) (citations omitted).

25     **2. Plaintiff's relevant medical history**
26         **a. 1989**
27     Plaintiff injured his heels and ankles on January 6, 1989. (Doc. # 56-1 (Ex. A-1).) An
28 x-ray revealed Plaintiff suffered fractures in both ankles. (*Id.*) Plaintiff was discharged from

9

1  the NDOC infirmary on May 24, 1989, and was provided medication and two pillows, three
2  blankets, a large basin to soak his feet, extra tier time to account for his slow ambulation, and
3  a walker. (Doc. # 48 at 9.)

#### b. 1991

Defendants are correct that the 1991 medical records produced by Plaintiff do not indicate the issuance of a "no kneel" order. (Doc. # 48 at 11.)

#### c. 1997

Plaintiff requested insoles on May 6, 1997. (Doc. # 48 at 2.) On September 15, 1997, he complained that injuries resulting from his fractures were causing him problems. (*Id.*) The physician opined that Plaintiff had good arches and that he did not need heel supports. (*Id.*) Plaintiff was sent to Carson Orthopedic Center for an x-ray, which revealed a negative study. (*Id.* at 8, Doc. # 56-1 (Ex. A-2).)

#### d. 1998

In 1998, there is no reference to Plaintiff's ankle injuries or a "no kneel" order. (Doc. # 48 at 12.)

#### e. 2008-2010

On March 7, 2008, a "no kneel" order was issued for Plaintiff, for a period of 180 days. (Doc. # 56-2 at 8.) He was also ordered a wrist restraint with a longer chain. (*Id.*) The order was approved by Defendant McDaniel. (*Id.*)

Plaintiff submitted a medical kite regarding his "no kneel" order on August 24, 2008. (Doc. # 56-3 at 9.) The prison responded that Plaintiff would be scheduled for an appointment. (*Id.*)

Plaintiff was seen on September 10, 2008, for a request for a "no kneel" order. (Doc. # 56-2 at 4.) Plaintiff was informed that the practitioner only issues these to patients with known neurological structural or surgical limitations, and Plaintiff became agitated and left the room before being physically assessed to determine the need for a "no kneel" order. (*Id.*)

On October 3, 2008, Plaintiff requested to be seen regarding his foot and ankle injuries "in hopes of getting" a "no kneel" order continued. (Doc. # 56-3 at 6.) The prison responded

10

1  that they would schedule an appointment. (*Id.*) Plaintiff was seen on October 10, 2008,
2  requesting a "no kneel" order. (Doc. # 56-2 at 3.) Plaintiff was informed that this order was
3  only provided to patients with known neurological, structural or surgical limitations, and that
4  he was unable to grant a "no-kneel" order at that time. (*Id.*) The examination notes indicate
5  Plaintiff had a steady gait and his passive range of motion and bilateral ankles were intact. (*Id.*)
6  There is a note that the provider would re-evaluate Plaintiff for a "no kneel" order. (*Id.*)

7  On November 21, 2008, Plaintiff stated that he was in the grievance process regarding
8  Defendant Martin's decision that Plaintiff did not meet the criteria necessary for a "no kneel"
9  order, and notified Defendant Martin that he was filing a civil rights complaint. (Doc. # 56-3
10 at 5.) The prison responded on November 25, 2008, that there was no clinical indication for
11 a "no kneel" order, stating that Plaintiff was "physically able to do so." (*Id.*)

12 There are no medical records referencing a "no kneel" order from this time until June
13 20, 2010, when Plaintiff sent a kite stating that he could not rise from a kneeling position, and
14 requested a "no-kneel order." (Doc. # 56-3 at 1.) Plaintiff was seen on June 12, 2010,
15 requesting a "no-kneel" order. (Doc. # 56-2 at 3.) Plaintiff submitted another medical kite on
16 June 28, 2010 stating that he is unable to rise from a kneeling position because of old injuries.
17 (Doc. # 56-2 at 10-15.) He stated that he previously had a "no-kneel" order, which was not
18 renewed on September 10, 2008. (*Id.* at 11.) Plaintiff asserts that this has resulted in his
19 missing showers and yard time, and has increased his anxiety level. (*Id.* at 12.) The prison
20 responded that Plaintiff was scheduled to see a provider regarding this matter. (Doc. # 56-2
21 at 10.)

22 On August 16, 2010, the "no kneel" order was renewed for one year. (Doc. # 56-2 at 7.)
23 The order states that it is related to Plaintiff's advanced arthritis and range of motion. (*Id.*)
24 The order was signed by Defendant Martin and approved by Defendant McDaniel. (*Id.*)

25 **3. Analysis**

26 Assuming without deciding that Plaintiff suffered from a serious medical condition, the
27 court finds there is no evidence of deliberate indifference on the part of Defendants.

28 Plaintiff's current treating physician, Dr. Koehn, has reviewed Plaintiff's medical

11

records and opines that Defendant Martin's decision not to renew Plaintiff's "no kneel" order in 2008 was medically appropriate. (Doc. # 54 (Ex. B) at 23, ¶ 5(a).) He also opines that Plaintiff's medical records demonstrate that Plaintiff suffered no injuries between 2008, when the request to renew his "no kneel" order was denied, and 2010 when the "no kneel" order was renewed. (*Id.* at ¶ 5(b).) Dr. Koehn states that Plaintiff can always request a renewal of his "no kneel" order and it will be renewed if Plaintiff continues to demonstrate he is medically eligible for this order. (*Id.* at ¶ 8.)

Plaintiff requested and was seen regarding his request for a "no kneel" order on September 10, 2008. (Doc. # 56-2 at 4.) He was seen again regarding this request on October 10, 2008. (Doc. # 56-3 at 3.) On both occasions, Plaintiff was told that such an order would only be issued to a patient with a known neurological structural or surgical limitation. (Doc. # 56-2 at 5, Doc. # 56-2 at 3.) At the September 10, 2008 appointment, Plaintiff became agitated with this response, and then left the room before he was able to be physically assessed to determine the need for such an order. (Doc. # 56-2 at 4.) At the October 10, 2008 appointment, Plaintiff was evaluated, and it was noted that Plaintiff had a steady gait and that his bilateral range of motion and bilateral ankles were intact. (Doc. # 56-2 at 3.) It was concluded that he did not need a "no kneel" order at that time, but he would be re-evaluated in the future. (*Id.*)

Plaintiff sent a medical kite on November 21, 2008, stating that he was grieving this decision and filing a civil rights complaint. (Doc. # 56-3 at 5.) The prison responded that there was no clinical indication for a "no kneel" order. (*Id.*) There are no other medical records referencing a "no kneel" order until June 20, 2010, when Plaintiff stated that he could not rise from the kneeling position and requested a "no kneel" order. (Doc. # 56-3 at 1.) Plaintiff was scheduled to see a provider regarding his complaints, and the "no kneel" order was subsequently renewed. (Doc. # 56-2 at 7, 10.)

The medical evidence suggests that Defendant Martin determined that a "no kneel" order was not medically required during the relevant time period. When Plaintiff subsequently complained, the situation was reevaluated and the order was renewed. There is simply no evidence that any of the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. In fact, there is no evidence that Plaintiff suffered any further injury as a result of the non-renewal of the order between 2008 and 2010. *See McGuckin*, 974 F.2d at 1060 (where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury). Moreover, Plaintiff's allegations appear to constitute a difference of opinion between prison medical staff and Plaintiff over the course of treatment requested. As such, Plaintiff's claim cannot succeed without establishing that the course of treatment chosen, *i.e.,* not renewing the "no-kneel" order, was medically unacceptable, and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. *See Jackson v. McIntosh*, 90 F.3d at 332 (citations omitted). There is simply no evidence that the decision not to renew the no-kneel order was medically unacceptable or that it was chosen in *conscious disregard* of an *excessive* risk to Plaintiff's health. Instead, the evidence establishes that the "no kneel" order was not renewed between 2008 and 2010 because it was not medically indicated.

Plaintiff has not produced evidence in support of his motion that would entitle him to a directed verdict if it went uncontroverted at trial. *See C.A.R. Transp.*, 213 F.3d at 480. Nor has he established the absence of a genuine issue of fact as to each issue material to his case. *Id*. Defendants, on the other hand, have presented evidence, in the form of Plaintiff's medical records, which negate the deliberate indifference element of Plaintiff's case, and Plaintiff has failed to raise a genuine issue of material fact as to this issue. *See Celotex*, 477 U.S. at 323-25. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. # 41) should be denied, and Defendants' Motion for Summary Judgment should be granted.

///

///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Injunctive Relief (Doc. # 30).

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #41) and **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 54).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 4, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE